887 So.2d 808 (2004)
Derrick L. HOUSTON a/k/a Derrick Lashaun Houston, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01475-COA.
Court of Appeals of Mississippi.
May 18, 2004.
Rehearing Denied August 10, 2004.
Certiorari Denied December 2, 2004.
*810 James A. Williams, Brookhaven, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before KING, C.J., THOMAS and MYERS, JJ.
KING, C.J., for the Court.
¶ 1. Derrick L. Houston was convicted of robbery with the use of a deadly weapon and aggravated assault in the Lauderdale County Circuit Court. Houston was sentenced to a term of twenty years on each offense, in the custody of the Mississippi Department of Corrections, with the sentences to run concurrently. Aggrieved, Houston appeals raising the following issues which we quote verbatim:
I. Whether a defendant is denied a fair trial by jury, fundamental fairness and due process of law, when a suggestive out-of-court identification has tainted the in-court identification and the conviction should be reversed and remanded for a new trial.
II. Whether the closing argument by the State contemptuously attacked the credibility of the defense counsel and commented upon the defendant's failure to testify and shifted the burden of proof and thus so prejudiced the jury that defendant was denied a fair trial, fundamental fairness and due process of law and a new trial is required.
III. Whether a defendant convicted of both armed robbery and aggravated assault where the assault is an integral part of the armed robbery is denied his right against double jeopardy and the conviction and sentence on the aggravated assault must be vacated to avoid double punishment for the same crime.

*811 IV. Whether defendant is denied effective assistance of counsel when trial counsel does not object to hearsay from the victim about display by a defendant's father of his photograph and the victim's remarks to the father and about display by the district attorney's office of another photograph she said wasn't the robber and repeated opinions by the detective that the identification was sound because he believed the victim's [sic] and is ineffective by voir dire that speaks of the indictment as "probable cause" and then a comparison of the indictment in his closing argument to the State's burden of proof and fails to pursue a pre-trial motion to suppress any identification by the victim.
V. Whether the weight and sufficiency of the evidence do not support a guilty verdict because the identification is too suspect defendant is entitled to a new trial.

FACTS
¶ 2. Marlene Hester testified that on the evening of February 19, 2001, she was working alone as a clerk at Little Joe's Package Store on Highway 19 North in Meridian. At approximately 9:30 p.m., a black male entered the store, pulled a small silver-plated handgun out of his pants, pointed the gun at her, and demanded money.
¶ 3. Hester indicated that the male appeared to be in his early 20s, had a lot of gold in his mouth, wore jeans, a dark blue shirt, and a bandana around his head.
¶ 4. The robber stooped behind the counter to avoid being seen and demanded that Hester place all of the money from the cash register in a bag. Hester complied, but the robber insisted that there was more money in the store. The robber asked whether there was a safe in the store. When Hester said no, he hit her with the gun. The robber took Hester to the stock room at the rear of the store. In the stock room, the robber pulled the telephone cord out of the wall, struck Hester in the head with the gun, and threatened to kill her if she did not tell him where more money was located. Hester stated that the robber hit her on the head once with the gun and four or five times on the arms.
¶ 5. Hester informed the robber that there was a box in the room which contained $250. The robber kept insisting that this was not all of the money and that he was going to kill Hester.
¶ 6. After taking possession of the money, the robber made Hester lie down behind some boxes in the stock room and left through the front door. After Hester heard the bell jingle on the front door, she used the telephone at the front of the store to report the incident. Hester also testified that there was a surveillance camera in the store but she told the robber that it did not work.
¶ 7. Following treatment at the emergency room for her injuries, Hester went to the police station where she looked at several books containing photographs of potential suspects. She did not see the robber in any of the books.
¶ 8. Later, Hester looked at a second set of between fifteen and twenty photographs that Officer Tim Eldridge of the Meridian Police Department brought to her job for viewing. Eldridge had called and advised Hester that someone that he thought fit her description of the robber had been picked up by the police. When Hester viewed these photographs, she immediately picked out Derrick Houston.
¶ 9. Hester testified that approximately one or two weeks after identifying Houston from the second set of photographs, Houston's father came into the store. He *812 suggested that she may have confused his son with a person of similar appearance, and asked that she view some photos, which he brought with him. Hester identified Houston and stated that the picture showed him wearing the same bandana he wore on the night of the robbery.
¶ 10. Houston raised an objection to the admission of a black and white copy of the photographs as opposed to the actual color photographs used in the line- up. However, there was no objection to the in-court identification made by Hester.
¶ 11. Houston was convicted of robbery by use of a deadly weapon and aggravated assault.

ISSUES AND ANALYSIS

I.

Whether the out-of-court identification procedures were so highly suggestive that the in-court identification was tainted.
¶ 12. Houston asks this Court to reverse and remand this matter arguing that the admission of the out-of-court identification procedures and the in-court identification were plain error. Plain error requires that there be an error which was (1) readily apparent, (2) not presented to the trial court for disposition, and (3) which results in a manifest miscarriage of justice. Sanchez v. State, 792 So.2d 286(¶ 16) (Miss.Ct.App.2001). "The plain error doctrine has been construed to include anything that `seriously affects the fairness, integrity or public reputation of judicial proceedings.'" Dobbins v. State, 766 So.2d 29(¶ 5) (Miss.Ct.App.2000).
¶ 13. Houston argues that both the in-court and out-of-court identification affected his substantive rights. Houston claims that the original six-photograph line-up sheet (exhibits S-8 and S-9) shown to Hester was suggestive in (1) that all photos save his had dates of arrest that were before February 19, 2001, thereby causing his photo to stand out, (2) that he was the only person not in the formal photograph room, and (3) that in the photos only two individuals, including himself, had "raised eyebrows."
¶ 14. While there is no question but what these issues are a matter of concern to Houston, they are not under these facts, matters to address as plain error. Accordingly, this Court declines to note them as plain error.
¶ 15. An appellant is obligated to present to the trial court for disposition each matter which he claims to be error. Evans v. State, 725 So.2d 613 (¶ 384) (Miss.1997). The failure to do so acts as a procedural bar to this Court's consideration of that matter, for we decline to place a trial judge in error on a matter not presented to him. Id.
¶ 16. While applying a procedural bar to this issue, it must be noted that it is without merit.
¶ 17. An impermissibly suggestive pre-trial identification does not preclude in-court identification by an eyewitness who viewed the suspect at the procedure "unless: (1) from the totality of the circumstances surrounding it, (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Nicholson v. State, 523 So.2d 68, 72 (Miss.1988). In addressing that question our courts have been instructed when considering identification testimony, to apply the factors in Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), which are as follows: (1) opportunity of the witness to view the accused at the time of the crime, (2) the degree of attention exhibited by the *813 witness, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty exhibited by the witness at the confrontation, and (5) the length of the time between the crime and the confrontation. Additionally, the supreme court has suggested that slight or minor differences in the photographs do not necessarily constitute an impermissible suggestion. Brooks v. State, 748 So.2d 736(¶ 27) (Miss.1999).
¶ 18. Having reviewed Houston's claim, this Court finds this issue to be without merit.

II.

Whether the trial court erred in allowing the State to make prejudicial remarks about Houston during the closing argument.
¶ 19. Houston contends that the State made prejudicial comments during closing argument. During the closing argument, Houston's counsel objected to the following comment made by the State:
[BY THE PROSECUTOR] ... Step No. 3, she made a positive identification when he came back. Ms. Hester, I want you to take your time. I don't need to take my time, here he is. That night she couldn't do that because the guy wasn't there. But he was in the photo lineup that the detective showed her later. That is another step. His father comes by with some pictures saying, Is this him? Is this him? Is this him? No, no, that's not him, that's not him, that's not him. But that is him, and picks him out again. Ladies and gentlemen, you know, all this hoopla about this, I don't know, Alexander Harris, Alex Williams, if the defendant and his family have access to this man, why didn't they bring him forward? They have opportunity to make sure 
BY MR. PARRISH: Your Honor, I object on improper shifting of the burden. That is improper argument.
BY THE COURT: Well, I understand that. I think it is exactly that, argument. Objection overruled.
Notwithstanding the wide latitude afforded attorneys in closing arguments, "[t]he standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." Sheppard v. State, 777 So.2d 659(¶ 7) (Miss.2000). The court instructed the jury that before returning a verdict of guilty, the State must prove to the jury's satisfaction that Houston was guilty beyond a reasonable doubt and that Houston was not required to prove his innocence.
¶ 20. In his brief, Houston contends that the State "implicitly commented on [Houston's] remaining silent." The prosecution asked Officer Eldridge whether he had an opportunity to talk with Houston after Hester identified him from the photographs. Eldridge indicated that he had an opportunity to speak with Houston once he was brought to the station and was given his Miranda rights. However, the record reflects that Houston objected and asked for a mistrial due to improper reference to Houston's failure to testify during direct examination of Officer Eldridge. The trial court sustained the objection but denied Houston's motion for a mistrial.
¶ 21. Houston also claims that the State shifted the burden of proof to him when the trial court allowed Officer Eldridge to show that someone named Devry Oliver could not have been a potential suspect since he was incarcerated at the time of the robbery, after Houston's counsel alleged *814 during the trial that Oliver could have been a potential suspect.
¶ 22. In addressing the comments made, we find that the trial court instructed the jury in the following manner: "Arguments, statements, and remarks of counsel are intended to help you understand the evidence and apply the law. But they are not evidence. If any arguments, statement, or remark has no basis in the evidence, then you should disregard that argument, statement, or remark." The trial court also advised the jury that "you must not consider the fact that the defendant did not testify as evidence against him, and no inference of any kind may be drawn from the fact that the defendant did not testify in this case." Therefore, we find the remark to be harmless since the jury was instructed to disregard the remark and affirm the trial court's decision.

III.

Whether Houston's conviction of aggravated assault, an offense arising out of the same set of facts as the armed robbery, gives rise to a claim of double jeopardy.
¶ 23. Houston claims to have been subjected to double jeopardy because Hester's testimony indicated that the "armed robbery was still in progress when the Defendant struck her over the head with the pistol." Double jeopardy allows a defendant to be protected against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense. Greenwood v. State, 744 So.2d 767(¶ 14) (Miss.1999). In determining whether double jeopardy attaches, we apply the same elements test. "Where the two offenses for which the defendant is punished or tried cannot survive the same elements test, the double jeopardy bar applies ... [t]he same elements test, sometimes referred to as the `Blockburger' test, inquires whether each offense contains an element not contained in the other; if not, they are the `same offense' and double jeopardy bars additional punishment and successive prosecution." Id.
¶ 24. However, a criminal defendant may be prosecuted for more than one statutory offense arising out of a basic set of facts where each offense charged requires proof of a different element. Davis v. State, 750 So.2d 552(¶ 44) (Miss.Ct.App.1999).
¶ 25. While the charges of armed robbery and aggravated assault arose out of the same set of facts, the elements of each offense are separate and distinct. The elements of armed robbery, as defined in Mississippi Code Annotated Section 97-3-79 (Rev.2000), include: (a) a felonious taking or attempt to take, (b) from the person or from the presence, (c) the personal property of another, (d) against his will, (e) by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon.
¶ 26. Count I of Houston's indictment stated that Houston "wilfully, unlawfully and feloniously [took] or [attempted] to take ... ($801.00) ... from the person and presence of [Hester] against the person's will, by violence to said person by the exhibition of a deadly weapon, to-wit: a handgun, putting the said employee in fear of immediate injury to said person...."
¶ 27. The court instructed the jury that in order to find Houston guilty of armed robbery, it must find the following: (1) that Derrick Houston did wilfully and unlawfully take the personal property of Little Joe's Package Store, (2) from the person or presence of Marlene Hester, (3) against her will, (4) by putting her in fear *815 of bodily injury, and (5) by the exhibition of a deadly weapon.
¶ 28. The elements of aggravated assault, as defined by Mississippi Code Annotated Section 97-3-7 (Supp.2003), include: (a) attempting to cause serious bodily injury to another, or causing such injury, (b) purposely, knowingly or recklessly, (c) under circumstances manifesting extreme indifference to the value of human life; or (a) attempting to cause or purposely or knowingly causing bodily injury to another, (b) with a deadly weapon or other means likely to produce death or serious bodily harm.
¶ 29. Count II of Houston's indictment regarding the aggravated assault charge stated that Houston "did recklessly, knowingly or purposely cause or attempt to cause bodily injury to another, [Hester], with a deadly weapon, a handgun, by striking her in the back of the head with the handgun (pistol-whipping)...."
¶ 30. The court instructed the jury that to find Houston guilty of aggravated assault, it must find: (1) that Derrick Houston, did recklessly, knowingly or purposely cause bodily injury to Marlene Hester and (2) by striking her with a deadly weapon.
¶ 31. Clearly the offenses for which Houston was convicted required different elements of proof. Because of the required different elements of proof, double jeopardy does not apply. Therefore, we find no merit in this issue.

IV.

Whether Houston was denied effective assistance of counsel.
¶ 32. Houston argues that he received ineffective assistance because his attorney (1) failed to object to Hester's out-of-court identification and her subsequent in-court identification, (2) failed to object to Hester's testimony that Houston's father had shown her a photograph of Houston and another person, (3) failed to object to Hester's testimony about being shown a photograph at the district attorney's office, (4) should not have asked Officer Eldridge questions on re-cross examination which allowed him to express his opinion that Hester was correct in her identification of Houston, and (5) compared "probable cause" to the burden of proof of beyond a reasonable doubt during voir dire and during the closing argument.
¶ 33. "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Simon v. State, 857 So.2d 668(¶ 22) (Miss.2003). To establish a claim of ineffective assistance of counsel, Houston must prove that under the totality of the circumstances (1) counsel's performance was deficient and (2) the deficient performance deprived him of a fair trial. Id.
¶ 34. This Court is reluctant to define counsel's trial strategy as ineffective assistance of counsel. On matters of trial strategy, this Court generally defers to the judgment of counsel. Woods v. State, 806 So.2d 1165(¶ 13) (Miss.Ct.App.2002). This Court often notes that complaints concerning counsel's failure to file certain motions, call certain witnesses, ask certain questions, and make certain objections fall within the ambit of trial strategy. Cole v. State, 666 So.2d 767, 777 (Miss.1995). Houston's complaints fall within this general principle. This issue is without merit.

V.

Whether the weight and sufficiency of the evidence support the verdict.
¶ 35. Houston argues that both the weight and sufficiency of the evidence *816 do not support the verdict and that he should have been granted a new trial. Our standard of review regarding the weight of the evidence is as follows:
In determining whether or not a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when it is convinced that the circuit court has abused its discretion in failing to grant a new trial.
Brown v. State, 726 So.2d 248(¶ 16) (Miss.Ct.App.1998).
¶ 36. In his brief, Houston suggests that his conviction is not supported by the overwhelming weight of the evidence because Hester's identification was tainted by Officer Eldridge's comment to her prior to viewing the photographs. He claims Officer Eldridge told Hester "before hand that the suspect was in the 6-photograph line[-]up and he had just taken a Polaroid shot of him...." Houston argues that had it not been shown that Devry Oliver was not available as a suspect, there is little doubt that the outcome would have been different. To support his position, Houston maintains that the hearsay testimony given by Hester should not have been allowed.
¶ 37. Houston uses these same arguments as support for his claim that the verdict is not supported by the sufficiency of the evidence. Our standard of review concerning the sufficiency of evidence is as follows:
In appeals from an overruled motion for peremptory instruction and judgment notwithstanding the verdict, the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence... consistent with guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Brown v. State, 726 So.2d 248(¶ 8) (Miss.Ct.App.1998).
¶ 38. The State's identification of Houston consisted of Hester's eyewitness identification and a videotape of the robbery which showed the robber. "The jury is charged with the responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed." Smith v. State, 821 So.2d 908(¶ 4) (Miss.Ct.App.2002). "The jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, memory, and sincerity." Id."It is not for this Court to pass upon the credibility of witnesses and where evidence justifies the verdict it must be accepted as having been found worthy of belief." Id.
¶ 39. In this matter, the court instructed the jury to consider the Biggers factors mentioned in issue one to determine whether the identification made by Hester was credible and reliable. The jury resolved the issue of credibility in favor of the State's witnesses.
¶ 40. Accordingly, we find that the evidence in this case was sufficient to support a verdict of guilty and that this issue lacks merit.
¶ 41. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT OF CONVICTIONS OF COUNT I, ROBBERY WITH THE USE OF A *817 DEADLY WEAPON AND SENTENCE OF TWENTY YEARS; COUNT II, AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, SAID SENTENCES TO RUN CONCURRENTLY AND TO PAY RESTITUTION, IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
BRIDGES AND SOUTHWICK, P.JJ., THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.